# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 20-CR-0029-CVE |
| | ) |
| PABLO GINO HERNANDEZ, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Now before the Court is Defendant's Motion to Suppress (Dkt. # 20). Defendant argues that police lacked reasonable suspicion to believe that he was armed and dangerous, and drugs seized following a pat-down of his person should be suppressed. He also argues that police conducted a pat-down to search for general evidence of a crime, rather than a limited pat-down for the purpose of officer safety. Dkt. # 20, at 3. Plaintiff responds that police had reasonable suspicion to believe that defendant was armed and dangerous so as to permit a limited pat-down for weapons, and a stray statement by one of the officers that he wanted to "make sure nothing illegal" would be found on defendant's person does not negate the existence of reasonable suspicion. Dkt. # 21, at 7. The Court held a suppression hearing on March 11, 2020, and plaintiff offered the testimony of Tulsa Police Department (TPD) Officers Justin Beal and Brad Blackwell. Plaintiff also presented as exhibits bodycam footage from both officers and dashcam footage from their patrol car, and the Court has reviewed all the evidence submitted by plaintiff.

## I.

On January 17, 2020, TPD Officers Blackwell and Beal were on patrol near 1100 South Garnett Road in Tulsa, Oklahoma. Blackwell and Beal belong to the TPD Special Investigations Division Crime Gun Unit. They had received information from Drug Enforcement Agency Task Force Officer Randy Mackenzie to be on the lookout for a red truck in the area that was being used to traffic heroin. They observed a red truck make an illegal U-turn at an intersection, and they initiated a traffic stop of the red truck. Beal approached the red truck from the driver's side and Blackwell approached the truck from the passenger side. Beal detected a strong odor of vinegar and, based on his training and experience, he knew that this odor could be associated with the presence of heroin. Beal had recently worked on Operation Smack Dragon, which was an investigation into a Mexican drug trafficking organization that was distributing heroin in Tulsa. Beal had also participated in numerous narcotics investigations and was familiar with the smell of heroin. Beal testified that the driver's right hand was shaking and the driver appeared to be nervous. Beal also testified that the traffic stop was occurring in a high crime area that is frequently used by gang members. Beal requested the driver's license, which was provided by the driver, and Beal returned to his patrol car to run a records check. Blackwell remained with the truck while Beal ran a records check, and he spoke to the driver during this time. Beal identified the driver as Pablo Gino Hernandez, and he did not find that Hernandez had any criminal history or outstanding warrants.

Beal asked Hernandez to step out of the truck for a pat-down, and he stated that he wanted "to make sure there was nothing illegal" on Hernandez's person. He testified that he did not believe that Hernandez used heroin, and he suspected that Hernandez was engaged in heroin trafficking. Beal knew from his training and experience that drug traffickers regularly carry firearms, and he

2

wanted to conduct a pat-down of Hernandez for officer safety. Blackwell also testified that he regularly recovers firearms from persons engaged in the trafficking of illegal drugs. Blackwell moved from the passenger side of the vehicle and stood near Hernandez during the pat-down. Video footage shows that Hernandez was wearing a bulky sweatshirt, and it would not have been immediately apparent to officers if Hernandez was hiding a firearm or weapon under his sweatshirt. During the pat-down, Beal felt a soft pouch in Hernandez's back left pocket and he removed the pouch. Beal testified that the pouch was approximately 4 inches by 5 inches in size. However, in the Beal bodycam footage, the pouch appears to be much smaller, and it could not reasonably have contained a firearm. The pouch was red and does not appear to made out of metal, and the pouch was closed by means of a zipper. Beal immediately opened the pouch, and he found several tied-off small balloons inside. Beal recognized the balloons as a method to package heroin for distribution. Beal placed Hernandez under arrest and he conducted a probable cause search of the truck. Beal discovered two large bundles containing heroin in the back seat of the truck, and he found over $900 in cash in Hernandez's wallet.

Beal placed Hernandez under arrest and a magistrate judge signed a complaint charging Hernandez with possession of heroin with intent to distribute. A grand jury subsequently returned an indictment (Dkt. # 14) charging defendant with possession of at least 100 grams of heroin with intent to distribute.

## II.

Defendant argues that Beal did not have reasonable suspicion to believe that he was potentially carrying a weapon, and he claims that Beal conducted the pat-down as a generalized search for evidence of criminal activity. Dkt. # 20. Plaintiff responds that Beal had reasonable

3

suspicion to believe that defendant was armed and dangerous, and the drugs found on defendant's person during the pat-down and during a subsequent search of defendant's vehicle should not be suppressed. Dkt. # 21.

The Fourth Amendment guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures." U.S. CONST. amend. IV. "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." Terry v. Ohio, 392 U.S. 1, 16 (1968). "Reasonableness under the Fourth Amendment 'depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.'" United States v. King, 990 F.2d 1552, 1559 (10th Cir. 1993) (quoting United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975)). In balancing these interests, the Supreme Court has held that arrests, being the most intrusive of Fourth Amendment seizures, are reasonable only if supported by probable cause. Novitsky v. City of Aurora, 491 F.3d 1244, 1253 (10th Cir. 2007); United States v. Davis, 94 F.3d 1465, 1468 (10th Cir. 1996). Investigative detentions, which are Fourth Amendment seizures of limited scope and duration, are lawful if they are supported by a reasonable suspicion that the detained individual is engaged in criminal activity. Novitsky, 491 F.3d at 1253. The investigative detention must be "justified at its inception and reasonably limited in scope." United States v. Rice, 483 F.3d 1079, 1082 (10th Cir. 2007). The Tenth Circuit has made a clear distinction between the level of suspicion needed to initiate an arrest and an investigative detention:

> While an investigative detention is a seizure within the meaning of the Fourth Amendment, it need not be supported by probable cause. An investigative detention is justified where specific and articulable facts and rational inferences from those facts give rise to reasonable suspicion that a person has committed or is committing a crime.

United States v. Walraven, 892 F.2d 972, 975 (10th Cir. 1989) (quoting United States v. Espinosa, 782 F.2d 888, 890 (10th Cir. 1986)).

Defendant does not challenge the existence of reasonable suspicion as to the traffic violation giving rise to the traffic stop, and defendant also does not challenge the subsequent records check after Beal initiated the traffic stop. Instead, defendant's focus is solely on his removal from the vehicle for the purpose of conducting a pat-down for officer safety. As part of a traffic stop, police may order an occupant to get out of a vehicle for a pat-down search if the police officer has reasonable suspicion that a person may be armed and dangerous, even if the officer lacks probable cause to arrest the person. United States v. Rice, 483 F.3d 1079, 1082 (10th Cir. 2007). Reasonable suspicion is a "particularized and objective basis for suspecting the person stopped of criminal activity." Ornelas v. United States, 517 U.S. 690, 696 (1996) (internal quotation marks omitted). An "inchoate and unparticularized suspicion or 'hunch' is insufficient" to support reasonable suspicion. United States v. Hall, 978 F.2d 616, 620 (10th Cir. 1992) (internal quotations and citations omitted). Reasonable suspicion "represents a minimum level of objective justification which is considerably less than proof of wrongdoing by a preponderance of the evidence." Alcaraz-Arellano, 441 F.3d at 1260 (quoting United States v. Mendez, 118 F.3d 1426, 1431 (10th Cir. 1997)). In determining whether an officer had reasonable suspicion of criminal activity, the Court does not evaluate the facts in isolation, but instead construes them together based on the totality of the circumstances. United States v. Arivizu, 534 U.S. 266, 274 (2002).

The Court will consider the totality of the circumstances to determine whether Beal had reasonable suspicion to believe that defendant could have been carrying a firearm or weapon. Defendant argues that Beal was generally looking for evidence of a crime, and he did not intend to

search only for firearms on defendant's person. This argument is based, in part, on Beal's statement that he wanted to make sure that defendant had "nothing illegal" on his person. Dkt. # 20, at 1. However, the law is clearly established that an officer's subjective intentions are irrelevant to the reasonable suspicion analysis, and the Court will consider only the objective evidence that could have been known by Beal before he performed the pat-down. United States v. Latorre, 893 F.3d 744, 751 (10th Cir. 2018); United States v. Salas, 756 F.3d 1196, 1201 (10th Cir. 2014). The key piece of objective evidence available to Beal was the strong odor of vinegar coming from defendant's truck. Beal associated this odor with the presence of heroin based on his training and experience, and this is a relevant factor that Beal could have relied upon to form a belief that defendant was trafficking heroin. Beal had also received information concerning a red truck being used to traffic heroin near the location of the traffic stop, and this information provided additional support for the existence of reasonable suspicion. The Tenth Circuit has found that a suspect's connection with drug transactions can support the existence of reasonable suspicion that a suspect may be armed and dangerous. United States v. Garcia, 459 F.3d 1059, 1064 (10th Cir. 2006).

Beal testified that defendant's right hand was shaking and that defendant seemed nervous. The Tenth Circuit has been clear that "nervousness is of limited significance in determining reasonable suspicion," because even ordinary, law-abiding citizens exhibit signs of nervousness when encountering police. United States v. Pettit, 785 F.3d 1374, 1380 (10th Cir. 2015). Only extreme or abnormal nervousness can be considered as a factor for reasonable suspicion, and the officer must be able to identify specific and objective evidence to support a belief that the suspect was abnormally nervous. Id. The Court has reviewed Beal's bodycam footage and there is nothing that would suggest that defendant was unusually or abnormally nervous. It is possible that officers

6

could have found defendant to be somewhat nervous in his manner of conversation, but this was not so pronounced that it would objectively support a belief that defendant was engaged in criminal activity. Finally, plaintiff argues that the traffic stop took place in a high crime area, and this should not be disregarded as a factor in the reasonable suspicion analysis. The location of a traffic stop can be a relevant consideration for reasonable suspicion to conduct a pat-down in connection with other factors. United States v. Clarkson, 551 F.3d 1196, 1201-02 (10th Cir. 2009).

Considering the totality of the circumstances, the Court finds that police had reasonable suspicion to conduct a pat-down for officer safety. Beal had received information from Officer Mackenzie concerning a red truck being used to traffic heroin near the vicinity of 1100 South Garnett Road, and Beal and Blackwell stopped a red truck near this location after observing a traffic violation. The Court finds Beal's testimony credible as to the presence of a strong odor of vinegar and his belief that this odor indicated the presence of heroin inside the truck. Beal and Blackwell both testified that drug traffickers frequently carry firearms or other weapons for personal protection or to protect illegal drugs in their possession. The Tenth Circuit has also identified a strong connection between the trafficking of illegal drugs and the presence of weapons. Garcia, 459 F. 3d at 1064. The Court does not find that defendant was abnormally or unusually nervous, and this is not a factor that will be considered as part of the reasonable suspicion analysis. However, the Court will consider the location of the traffic stop in a high crime area as providing some support for the existence of reasonable suspicion to believe that defendant was armed and dangerous. Although the evidence is not overwhelming, reasonable suspicion represents the minimal level of justification for a limited search or seizure of a person for the purpose of the Fourth Amendment, and the Court finds that there was enough objective evidence from which a reasonable police officer could have

7

suspected that defendant was armed and dangerous. See United States v. Gurule, 935 F.3d 878, 885 (10th Cir. 2019) (reasonable suspicion "is not, and is not meant to be, an onerous standard").

Defendant argues that police exceeded the scope of a pat-down by removing a pouch from his back pocket and opening the pouch, even though it did not likely contain a weapon and it was no longer in defendant's possession. A pat-down must be limited in scope and police are not permitted to engage in a generalized search for evidence related to criminal activity. Minnesota v. Dickerson, 508 U.S. 366, 373 (1993). A pat-down should be a "carefully limited search of the [suspect's] outer clothing . . . in an attempt to discover weapons" that might be used to assault another person. United States v. Hammond, 890 F.3d 901, 905 (2018). However, police may seize evidence under the "plain view" doctrine if "police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object . . . ." Dickerson, 508 U.S. at 374-75. Beal's bodycam shows that the pat-down started in a reasonable manner and he initially limited the scope of the search to defendant's exterior clothing. Beal detected an object in defendant's back left pocket, and the object felt soft and he did not think that it was a firearm. He testified that he did not know what the object was at the time and he was concerned that the object could contain a weapon. Based on the size of the object, the Court finds it unlikely that any police officer could have formed a reasonable belief that the pouch contained a weapon. In any event, Beal removed the pouch from defendant's pocket and it was no longer in defendant's possession, and it unclear how the object posed a threat to Beal or Blackwell at this point in the encounter. Even if Beal believed that it was a weapon, he could have secured the item and left the pouch closed. Instead, he immediately open the pouch and discovered balloons containing quantities of heroin for distribution. This is consistent with Beal's

statement to defendant that he was looking for anything "illegal" on defendant's person, and the manner in which the pat-down was carried out does not suggest that Beal was limiting his search to weapons.

The Court finds that police had reasonable suspicion to conduct a pat-down of defendant's person, but the pat-down was excessive in scope and resulted in a violation of defendant's Fourth Amendment right to be free from an illegal search. A pat-down is intended to be a limited search of a suspect's outer clothing to identify and remove any weapons that could be used to harm police officers. Instead, Beal removed an item from defendant's person that was obviously not a weapon, and without hesitation he unzipped the pouch as if he were performing a search incident to arrest or a probable cause search of defendant's person. The Tenth Circuit has explained that the suppression of evidence is not automatic, and evidence should be suppressed "only if a reasonable police officer 'may properly be charged with knowledge, that the [seizure] was unconstitutional.'" United States v. Shrum, 908 F.3d 1219, 1239 (10th Cir. 2018) (quoting Herring v. United States, 555 U.S. 135, 144 (2009)). The Court finds that the drugs seized from defendant's person during the pat-down of defendant should be suppressed, because a reasonable police officer should have known that he needed a warrant or an exception to the warrant requirement to open a closed container found on a defendant's person. There no reasonable basis to believe that officer safety required Beal to open the pouch, and the pat-down was carried in a manner more consistent with a generalized search for evidence of criminal activity. There were no intervening acts between the illegal search of defendant's person and the search of his vehicle that would purge the taint of Beal's illegal conduct, and evidence seized from defendant's vehicle should also be suppressed. Shrum, 908 F.3d at 1239-40.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Suppress (Dkt. # 20) is **granted**.

**DATED** this 12th day of March, 2020.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE